Argued and submitted May 18, 1992, affirmed February 17, 1993

In the Matter of the Compensation of
Donald A. Hutchison, Claimant.

Donald A. HUTCHISON,
*Petitioner,*

*v.*

FRED MEYER, INC.,
*Respondent.*

(90-13199; CA A71931)

846 P2d 1219

Karen Stolzberg, Portland, argued the cause for petitioner. With her on the brief was Goldberg & Mechanic, Portland.

Brad G. Garber, Portland, argued the cause for respondent. On the brief were Deborah Sather and Cooney, Moscato & Crew, P.C., Portland.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Claimant seeks review of a Workers' Compensation Board order that held that employer's denial of his claim was not unreasonable and declined to award him a penalty. The issues are whether employer unreasonably denied the claim or unreasonably refused to rescind the denial. ORS 656.262(10).[1] We affirm.

Employer accepted a claim for bilateral carpal tunnel syndrome (CTS), and the claim was closed by a determination order on April 24, 1990. Claimant had surgery. After returning to work, he still experienced pain. On May 8, 1990, Dr. Ebert stated that claimant's new symptoms were consistent with CTS and noted that claimant had mild underlying sensory peripheral neuropathy, caused by his past alcohol abuse. He recommended surgery for recurrence of CTS. Claimant filed a new claim, and employer denied it on June 6, 1990.

Claimant told Ebert about the denial. On June 7, 1990, Ebert wrote that the CTS was compensable and that the neuropathy was only a minor factor in claimant's condition. The record also contains reports from Dr. Long on June 20, 1990; Dr. Nathan on August 1, 1990, and Dr. Ochoa on September 26, 1990, regarding the condition.

Claimant underwent surgeries on June 21 and July 5, 1990. On November 7, 1990, two days before the scheduled hearing, employer rescinded its denial and reopened claimant's claim. The Board found that claimant's attorney was instrumental in effecting employer's rescission of the denial and awarded attorney fees. ORS 656.386(1). It denied claimant's request for a penalty for an unreasonable denial, ORS 656.262(10), because it found that the denial was not unreasonable.

■■ In *Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988), we said:

---

[1] ORS 656.262(10) provides, in part:

"(a) If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due."

"Whether a denial is reasonable or unreasonable involves both legal and factual questions. We review for errors of law in examining whether the Board applied the correct legal standard. ORS 183.482(8)(a). That standard is whether, from a legal standpoint, [the insurer] had a legitimate doubt as to its liability. If so, the denial was not unreasonable. *Norgard v. Rawlinsons*, 30 Or App 999, 1003, 569 P2d 49 (1977). 'Unreasonableness' and 'legitimate doubt' are to be considered in the light of all the evidence available to the insurer. *See Ginter v. Woodburn United Methodist Church*, 62 Or App 118, 122, 659 P2d 434 (1983)."

■■ Whether the denial was unreasonable is determined in the first instance by examining the facts and circumstances as they existed when employer denied the claim. *Ginter v. Woodburn United Methodist Church, supra.* When employer issued its denial, the only medical evidence before it was Ebert's May 8 letter:

"In all probability, [claimant's] recurring symptomatology is due to an underlying, very mild sensory peripheral neuropathy. The sensory peripheral neuropathy, presumably, is related to his history of alcohol consumption in years past, which is not a current problem, incidentally. But, the patient does have a mild sensory peripheral neuropathy, which in all probability makes the nerves more susceptible to mechanical compression, as is typical of carpal tunnel syndrome."

From that, employer could have reasonably concluded that claimant's condition was caused by sensory peripheral neuropathy, which in turn stemmed from his alcoholism, and was not work-related.

■■ A reasonable denial can become unreasonable if new medical evidence removes the employer's legitimate doubt about its liability. *See Georgia-Pacific Corp. v. Arms*, 106 Or App 343, 347, 807 P2d 331 (1991); *Brown v. Argonaut Insurance Company, supra*, 93 Or App at 592. Claimant argues that employer received information after its denial that rendered continuation of the denial unreasonable. Ebert's second letter, written June 7, 1990, after claimant had informed him of the denial, said:

"It is my understanding that Alexis Risk Management accepted [claimant's] claim initially and authorized and paid for the initial operation on each hand. The accepted condition was bilateral carpal tunnel syndrome.

"In my May 8, 1990 dictation I noted his initial response to the surgery was very good but subsequently his symptomatology has returned. There is no question that his employment as a meat cutter for Fred Meyer, Inc., materially aggravates his symptomatology and is a contributing cause.

"I have recently been informed that his current claim was disallowed on the basis that his current condition is due to alcohol. Please allow me to clear up the confusion. [Claimant's] peripheral neuropathy makes him more susceptible to mechanical compression than if he did not have the peripheral neuropathy. However, this is not the only causal factor to be considered in [his] recurrent bilateral carpal tunnel syndrome. Bilateral carpal tunnel syndrome is due to mechanical compression. The nerves may be more susceptible to mechanical compression as a result of sensory peripheral neuropathy. But that is certainly not the only causal factor. Thus, the causal factor which (within reasonable medical probability) made [claimant] more susceptible to the mechanical compression which he has is P[eripheral] N[europathy]. There simply is no intelligent rationale for allowing the claim initially and then subsequently deciding not to allow it now. [Claimant's] initial diagnosis * * * was bilateral carpal tunnel syndrome and [he] had a minor peripheral neuropathy at that time. If [his] only diagnosis was sensory peripheral neuropathy then I would agree with you that this is not a compensable work related disorder. But that is not the only diagnosis. [Claimant] has a moderate to marked right carpal tunnel syndrome and a mild to moderate left carpal tunnel syndrome.

"Thus, to clarify the first sentence on page 3 of my May 8, 1990, dictation, in all probability [claimant's] recurrent symptomatology is partially due to an underlying very mild sensory peripheral neuropathy. In addition, of course, the carpal tunnel syndrome is due to mechanical compression. Thus I recommend that you authorize the current recommended surgery under his workers' compensation claim."

Long wrote on June 20, 1990, that he did not see any evidence of diffuse polyneuropathy and that claimant's alcoholism could not be "considered a significant contributor to any of [claimant's] current symptoms or to the need for any additional treatment." He did not say that claimant's CTS was work-related. On August 1, 1990, Nathan wrote that he found no evidence of polyneuropathy but found that claimant had entrapment neuropathies that were not caused by his

work activities. On September 26, 1990, Ochoa found "clear signs of a predominantly sensory polyneuropathy," but said that "at this stage * * * it is not the direct cause of the symptoms."

The Board found that employer was not notified that claimant's polyneuropathy was not the cause of his CTS until it received Ochoa's letter. In his June 7, 1990, letter, Ebert attempted to clarify that claimant's condition was compensable but failed to do so. He said that claimant's symptoms were partially due to peripheral neuropathy, which made him more susceptible to mechanical compression. He wrote that claimant's employment materially aggravated his condition and was a contributing cause, but he did not say that employment was the major contributing cause. The Board implied dissatisfaction with the lack of detail in the letters from Long and Nathan when it found that Ochoa's letter "is the first report that discussed in detail the interaction of claimant's neuropathy and his carpal tunnel syndrome." The Board could reasonably interpret the letters from Long and Nathan to be sufficiently indefinite that employer could continue to have a legitimate doubt about the cause of claimant's CTS.

Affirmed.